UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:12-CR-111 JD |
| COREY D FAIR | |

**OPINION AND ORDER**

The incarcerated Defendant Corey Fair, proceeding *pro se*, has moved for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (DE 52.) For the reasons herein, the motion will be denied.

**A. Background**

In 2012, Mr. Fair was charged by the Government with 12 counts relating to a series of armed robberies in the South Bend area (DE 12). These robberies involved Mr. Fair robbing several local businesses including restaurants, a taxi driver, and a liquor store at gunpoint. (DE 28 ¶ 5–225.) Six of the counts were charges of Hobbs Act robbery in violation of 18 U.S.C. § 1951, and the other six were for possession and use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c). *Id.* In 2013, Mr. Fair was found guilty, after pleading guilty, to the six counts of Hobbs Act robbery (DE 40, 19). As part of the plea agreement, the Government moved to dismiss the remaining six § 924(c) counts and the Court granted that motion. (DE 39.) The Court initially sentenced Mr. Fair to 220 months of imprisonment pursuant to the terms of his binding plea agreement. (DE 19 ¶ 7(h).) This sentence was later modified to 160 months of imprisonment. (DE 51.) Mr. Fair remains incarcerated with an anticipated release date in 2024.

Mr. Fair filed this motion for a reduction in sentence in February 2022. The Court referred Mr. Fair's motion to the Federal Community Defenders' Office, which determined that it was unable to assist him. Therefore, the Court will consider Mr. Fair's own submissions. The Court later ordered supplemental briefing by the parties. (DE 14). The supplemental briefing has now been filed and the motion is ripe for decision.

**B. Legal Standard**

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, an exception to that general rule allows a court to modify a sentence, after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant such a reduction," the reduction is consistent with policy statements issued by the Sentencing Commission, and the defendant has submitted such a request to the warden at least 30 days before filing a motion or has fully exhausted all administrative rights within the Bureau of Prisons ("BOP"). 18 U.S.C. § 3582(c)(1)(A). This analysis proceeds in two steps. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) (*cert*. denied 142 S. Ct. 1363 (2022)). At the first step the defendant must identify an extraordinary and compelling reason warranting a sentence reduction. *Id.* If the defendant establishes such a reason, the district court, in the discretion conferred by the statute, considers any applicable § 3553(a) factors as part of determining what reduction to award the defendant. *Id.*

The application notes to the Sentencing Guidelines offer some examples of when extraordinary and compelling reasons may be present. Those include when the defendant is suffering from a terminal illness or is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the prison. U.S.S.G. § 1B1.13 n.1. *See United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020) (finding the substantive aspects

of U.S.S.G. § 1B1.13 and its Application Notes provide a "working definition" of "extraordinary and compelling reasons" that can guide a court's discretion "without being conclusive").

In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where [she] is housed and [her] personal health conditions." *United States v. Council*, 2020 WL 3097461, at *5 (N.D. Ind. June 11, 2020); *see also United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020). In determining whether there is an extraordinary and compelling reason to modify a term of imprisonment, the Court may consider (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes her especially susceptible to the dangers of COVID-19, (3) the age of the defendant, and (4) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461, at *5–7; *United States v. Barrett*, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic).

**C. Discussion**

Having reviewed Mr. Fair's submissions, the Court finds Mr. Fair has not established an extraordinary and compelling reason warranting modification of his sentence.

Mr. Fair raises three arguments that he possesses an extraordinary and compelling reason for a modification. First, that intervening changes in law regarding 18 U.S.C. § 924(c)'s "stacking" provisions constitutes an extraordinary and compelling reason for a sentence

3

reduction.¹ Second, Mr. Fair launches a collateral attack on his conviction, arguing that his indictment was defective and that he had ineffective assistance of counsel. Third, that he is at risk of serious illness or death from Covid-19 infection due to his preexisting medical conditions of obesity and his history as a smoker. Mr. Fair also argues that the 3553(a) factors weigh in favor of his release, specifically his rehabilitation while incarcerated and his planned familial and community support if released.

The Government opposes Mr. Fair's motion. They argue that he has not presented an extraordinary and compelling reason warranting compassionate release and the § 3553(a) factors do not favor release. Further, the Government notes that the BOP has no record of Mr. Fair submitting a compassionate release request and the documentation he proffered supporting his submission is ambiguous. Nonetheless, the Government does not argue that he has failed to exhaust his administrative remedies.² The Court will address each of Mr. Fair's arguments in turn.

### (1) *Mr. Fair has not established an extraordinary and compelling reason for a sentence reduction*

Mr. Fair's first argument is that a change in law after his sentencing constitutes an extraordinary and compelling reason to modify his sentence. Specifically, Mr. Fair points to the First Step Act of 2018's elimination of the "stacking provision" for § 924(c) mandatory minimum sentences. Mr. Fair alleges that because of the stacking provision he was facing a

---

¹ The First Step Act of 2018 modified 18 U.S.C. 924(c)(1)(C)(i) to clarify a defendant faces a 25-year minimum sentence if a prior conviction for §924(c) has become final, but he does not face that minimum if the only other §924(c) conviction is within the same indictment and the same case.

² "Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it." *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) (citations omitted).

4

potentially lengthier sentence in 2013, of almost 150 years for the § 924(c) counts, than he would if sentenced today, where he would only face 30 years and one month.[3] (DE 52 at 6.) He goes on to state that in the face of that lengthy potential sentence, he opted to agree to a plea agreement of 220 months. Mr. Fair asserts that if he had been charged under the current law, he could have negotiated a better plea bargain or may have chosen to go to trial. In support of this claim, Mr. Fair cites to the case of *United States v. Owens* from the Sixth Circuit where that court held the anti-stacking amendment constituted an extraordinary and compelling reason for modification of a sentence. 996 F.3d 755 (6th Cir. 2021).

The Court is not persuaded by this argument. As an initial matter, Mr. Fair was never convicted or sentenced on any § 924(c) counts. Mr. Fair's maximum statutory sentence today would be the same as it was in 2013 for the six counts of §1951, that is 120 years. This is a critical distinction from *Owens*, where the defendant had actually been convicted of five counts of § 924(c) at a jury trial. *Id.* at 757.

Further, the Seventh Circuit has expressly held that the anti-stacking amendment cannot constitute an extraordinary or compelling reason under compassionate release analysis, whether it is "considered alone or in connection with other facts and circumstances." *Thacker*, 4 F.4th at 571. This holding firmly forecloses Mr. Fair's arguments related to § 924(c).

Mr. Fair's argument in his reply brief that *Thacker* has been called into question by the Supreme Court's 2022 decision in *Concepcion v. United States* is without merit. 142 S. Ct. 2389 (2022). First, the Supreme Court refused to hear an appeal of *Thacker* in the same term in which

---

[3] The Court will note Mr. Fair's math seems somewhat off as his penalty under § 924(c) would likely have been a minimum of seven years, not five, for each count given he brandished a firearm in the course of his offenses. *See* 18 U.S.C. § 924(c)(1)(A)(ii). Therefore, under today's law he would face 42 years minimum imprisonment. Further, with the former stacking provision applied his maximum would be 132 years. That is 7 years on the first § 924(c) conviction and 25 years on each of the subsequent § 924(c) convictions.

the Court decided *Concepcion*. Second, the Seventh Circuit issued a subsequent decision which affirms that the holding of *Thacker* remains intact after *Concepcion*. *Thacker v. United States*, 142 S. Ct. 1363 (2022) (denying *certiorari*); *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) (holding that *Concepcion* did not affect the *Thacker* decision). Therefore, the 2018 anti-stacking amendment cannot serve as Mr. Fair's extraordinary and compelling circumstance.

Mr. Fair's second argument is that his indictment was fatally defective as it relates to the § 1951 counts because the indictment omitted the essential element of a "criminal intent mens rea" (DE 52 at 7.) Mr. Fair also alleges his trial counsel was ineffective for failing to discover this error and filing a motion to dismiss the indictment. *Id.*

This petition for compassionate release is not the appropriate vehicle for Mr. Fair to raise collateral attacks against his conviction. The proper vehicle for such attacks would be a petition under 28 U.S.C. § 2255. *See United States v. Barnett*, 849 Fed. Appx. 158 (7th Cir. 2021) (unpublished) (noting that §3582(c)(1)(A) motions only offer a path to modify a term of imprisonment and not to launch collateral attacks on a conviction). Additionally, Mr. Fair's plea agreement included a waiver of his right to collaterally attack his conviction using a § 2255 petition except for ineffective assistance of counsel claims related to the negotiation of the waiver itself. (DE 19 ¶ 7(f).) Mr. Fair does not address this waiver in his briefing and the Court has no reason to question its applicability to the claims he raises now. *See Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) (affirming the validity of § 2255 waivers in plea agreements).

Further, even if Mr. Fair's collateral attacks were not barred by the waiver, the time in which Mr. Fair could have filed a § 2255 petition has long since passed. 28 U.S.C. § 2255(f) (establishing a one-year window after the entry of final judgment to file a petition). Mr. Fair's

Amended Judgment was entered on December 10, 2019, but this motion was not filed until February 4, 2022. This is over two years later and well outside the window Mr. Fair had to file his § 2255 petition. *See Clarke v. United States*, 703 F.3d 1098, 1100 (7th Cir. 2013) (When there is no direct appeal, a judgment is final when opportunity to file appeal ends. That is normally 14 days after the sentencing).

Mr. Fair offers no explanation for his delay in attempting these collateral attacks. However, Mr. Fair does argue in his reply brief that pursuant to *United States v. Cotton*, his defective indictment claim, "cannot be waived or forfeited" and therefore the Court may consider this alleged error in evaluating his motion. (DE 65 at 6.) 535 U.S. 625 (2002).

This argument misunderstands the holding of *Cotton*. *Cotton* dealt with the issue of whether defective indictments are jurisdictional issues, that is whether a defective indictment was the sort of problem which prevented a federal court from hearing the case. 535 U.S. at 630–31. In *Cotton*, the Court noted that jurisdictional issues can never be forfeited or waived because they go to the core question of whether a court is even empowered to hear the case. *Id.* at 630. But the Court then held that defective indictments are not jurisdictional issues. *Id.* at 631 ("defects in an indictment do not deprive a court of its power to adjudicate a case."). This means that Mr. Fair's defective indictment claim could in fact be waived. *See also United States v. Maez*, 960 F.3d 949, 956 (7th Cir. 2020) ("indictment defects are never jurisdictional so they may be waived if not properly presented.") (internal citations omitted).

Mr. Fair makes no arguments regarding the deadline for his ineffective assistance claims. Nonetheless, the Court will note the Seventh Circuit has held ineffective assistance claims are also subject to the § 2255 deadline. *See Nolan v. United States*, 358 F.3d 480 (7th Cir. 2004) (affirming a district court decision that an ineffective assistance claim was barred by § 2255's

7

deadline). The Court is left to conclude that Mr. Fair has waived these collateral attack claims, to the extent they weren't barred by his plea waiver, by not filing a timely challenge.

Even if these collateral attack claims remained viable, it is unclear they could sustain Mr. Fair's § 3582 motion. Mr. Fair does not cite any authority establishing that it is possible for collateral attacks to constitute extraordinary and compelling reasons under § 3582.

The Court's own research suggests that a collateral attack cannot constitute an extraordinary and compelling reason because they are two fundamentally different legal questions which Congress did not intend to address in the same set of proceedings. A § 3582 motion is seeking to determine if a revision to the sentence is warranted given developments "completely external to the court's original judgment" while a collateral attack is pursuing a legal, factual, or procedural challenge to the court's decision. *United States v. Monroe*, 580 F.3d 552, 556–57 (7th Cir. 2009) ("[A § 3582 motion] is of a fundamentally different character than an appeal or collateral attack"). Congress created distinct proceedings for each type of inquiry, a proceeding under § 3582 to determine if sentence revisions are warranted and a proceeding under § 2255 to test the merits of collateral attacks upon a conviction. *See Thacker*, 4 F.4th 569 at 575.

The Seventh Circuit's recent decision in *United States v. King* further reinforces the understanding. *King* held that non-retroactive statutory changes or judicial decisions cannot constitute an extraordinary and compelling reason under § 3582 as there is "nothing extraordinary" about such developments. 40 F.4th 594, 595 (7th Cir. 2022). The court also held that the path to address the consequences of such developments is either through a direct appeal or a collateral review with a § 2255 petition. *Id.* Accordingly, Mr. Fair's arguments about a non-retroactive statute and alleged ineffective assistance many years ago, are similarly not extraordinary and cannot sustain his § 3582 motion.

The Court also notes that to allow collateral attacks to serve as the basis for a § 3582 motion would impermissibly comingle these questions and erode the Congressionally ordered system for how federal prisoners challenge their sentences. *Id.* The Court finds the following passage from *Thacker* to be particularly instructive;

> "[Expanding] the scope of the discretion conferred by § 3582(c)(1)(A) would allow the compassionate release statute to operate in a way that creates tension with the principal path and conditions Congress established for federal prisoners to challenge their sentences. That path is embodied in the specific statutory scheme authorizing post-conviction relief in 28 U.S.C. § 2255 and accompanying provisions."

*Id.* (internal citation omitted).

Therefore, even if Mr. Fair's collateral attacks had been preserved, those attacks could not serve as an extraordinary and compelling reason for modification of his sentence.

Mr. Fair's third argument is that his risk of severe illness or death from Covid-19 infection constitutes an extraordinary and compelling reason. Mr. Fair specifically claims that he was a smoker for over 10-years prior to his incarceration and that he is considered overweight due to his body mass index ("BMI") of 25.1. He argues that as these are two factors noted by the Centers for Disease Control and Prevention ("CDC") for increased risk of severe illness or death from Covid-19, this constitutes and extraordinary and compelling reason for a reduction in his sentence. The Court disagrees.

Even if the Court accepts Mr. Fair's assertions at face value, the availability of safe and effective Covid-19 vaccines offers him relief that is "more effective than a judicial order." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). Mr. Fair has thrice refused Covid-19 vaccines while he has been incarcerated. DE 63-3 at 54, 80–84. "[F]or the vast majority of

prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release." *Id.* Mr. Fair has not explained why he is different from the vast majority of prisoners. He has offered no explanation for his decision to refuse the Covid-19 vaccine or why it would not offer him effective relief. Further, the release of an unvaccinated individual into the community would likely exacerbate the ongoing pandemic which weighs against his release. *See Council*, 2020 WL 3097461, at *5–7. Consequently, the Court concludes Mr. Fair's risk from Covid-19 does not constitute an extraordinary and compelling reason on this basis alone.

Further, as the Government points out, Mr. Fair's medical records do not support his claims. Mr. Fair's BOP medical records for the past two years do not document breathing or lung concerns or other adverse health impacts from being a smoker. (*See* DE 63-2, 63-3.) Further, according to those records, Mr. Fair's most recently calculated BMI was 23 which places him within the normal range. (DE 63-4 at 4.); *About Adult BMI*, Centers for Disease Control and Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html (last visited Aug. 22, 2022) (indicating a healthy BMI range is between 18.5 and 24.9).

The Court recognizes that this BMI calculation was from August 2021 and Mr. Fair may have gained weight since then. Nonetheless, his self-reported BMI of 25.1 is just across the threshold into being considered overweight and is far short of being considered obese which is a BMI of 30 or greater. *Id.* While being in the category of overweight does increase the risk of severe Covid-19 disease, the risk "increases sharply with higher BMI." *People with Certain Medical* Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Additionally, the Court will note Mr. Fair, at 29 years old, is a young man and

he has only made relatively general claims of his susceptibility to Covid. His youth and the generic nature of his concerns weigh against finding that his risk of Covid-19 related harms constitutes an extraordinary and compelling reason. *See Council*, 2020 WL 3097461, at *5–7

While Mr. Fair may be at somewhat elevated risk of severe Covid-19 disease based on his BMI, the risks are not sharply higher than someone with a BMI in the healthy range. Therefore, the Court cannot find Mr. Fair's risk of severe illness or death from Covid-19, based on his prior health conditions, constitutes an extraordinary and compelling reason for a sentence reduction.

Accordingly, the Court concludes that Mr. Fair has not established an extraordinary and compelling reason warranting a modification of his sentence. Therefore, the Court would deny the motion based on his failure to satisfy the requirements of step one of the § 3582 analysis.

### (2) *The § 3553(a) factors weigh against reducing Mr. Fair's sentence*

The Court also concludes that, even if Mr. Fair had satisfied the first step, the § 3553(a) factors would weigh against his release. Mr. Fair argued the § 3553(a) factors weighed in favor of his release based on his rehabilitation efforts while incarcerated and being an overall good inmate despite several BOP misconduct reports.

The Court will begin by noting that Mr. Fair is to be commended for his efforts to rehabilitate himself in prison. Among his efforts, the Court will note his educational coursework and the anti-bullying program he has developed with his father. Further, he has shown strong evidence of support from his family and community members, including officials within the South Bend municipal government. (DE 52-1 at 30–39.) As Mr. Fair correctly notes in his brief, evidence of post sentencing conduct is highly relevant to several § 3553(a) factors and therefore relevant to a § 3582 motion. *Pepper v. United States*, 562 U.S. 476, 491–93 (2011).

However, the Court must weigh the unfavorable BOP records about Mr. Fair alongside the favorable records. These unfavorable records includes Mr. Fair's history of 10 disciplinary infractions while incarcerated in the BOP. The infractions include findings of fighting, assault, and possessing a dangerous weapon. (DE 63-1.) These records also include the BOP's latest recidivism assessment, in February 2022, which indicates that Mr. Fair is at a high risk of recidivism. (DE 63-5.)

The § 3553(a) analysis includes determining whether the defendant poses a danger to the community and whether a reduced sentenced would reflect the seriousness of Mr. Fair's offenses and promote respect for the law. *See* U.S.S.G. § 1B1.13. As an initial matter, Mr. Fair was convicted of committing a series of violent crimes against the community which he now seeks to reenter. Coupled with the issues presented by Mr. Fair's disciplinary history and his BOP assessment for recidivism risk, the Court cannot conclude Mr. Fair would not pose a danger to the community if he was released early. Additionally, the Court is not persuaded that a reduced sentence would adequately reflect the seriousness of Mr. Fair's crimes and promote respect for the law. Therefore, the Court concludes that Mr. Fair's rehabilitative efforts, while laudable, would not carry sufficient weight to merit a reduction in sentence.

Accordingly, the Court concludes that even if Mr. Fair had established and extraordinary and compelling reason for a modification of his sentence, the Court would deny a reduction in its discretion based on the relevant § 3553(a) factors.

### (3) *The Court is unable to grant Mr. Fair's request for home confinement*

Mr. Fair's motion also briefly makes a request for his sentence to be reduced to time served and to include a period of home confinement as a modified condition of his supervised release. For the reasons previously stated, the Court will deny Mr. Fair's request for a reduction

in sentence. To the extent Mr. Fair seeks to serve the remainder of his custodial sentence on home confinement, he must pursue that relief within the BOP as the courts do not have authority to transfer an inmate to home confinement. 18 U.S.C. § 3621(b) ("BOP's designation of a place of imprisonment … is not reviewable by any court"); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021).

### D. Conclusion

For those reasons, the Court DENIES Mr. Fair's motion for compassionate release or reduction in sentence. (DE 52.)

SO ORDERED.

ENTERED: September 1, 2022

                                                  /s/ JON E. DEGUILIO
                                                  Chief Judge
                                                  United States District Court